# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 20-1261V
UNPUBLISHED

| | |
|---|---|
| SARAH HENDERSON, | Chief Special Master Corcoran |
| Petitioner, | Filed: February 28, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*David John Carney, Green & Schafle LLC, Philadelphia, PA, for Petitioner.*

*Ronalda Elnetta Kosh, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On September 24, 2020, Sarah Henderson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu") vaccine administered on October 27, 2019. Petition at 1, ¶¶ 1, 19. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] After approximately four months of damages discussions, Petitioner rejected Respondent's counteroffer, requesting that I determine the appropriate amount of damages. Status Report, filed July 13, 2022, ECF No. 43.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$66,211.90**, **representing $65,000.00 for actual pain and suffering, plus $1,211.90 for past unreimbursed expenses.**

## I.   Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of*

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims,

*Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The *Graves* court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II.     Prior SIRVA Compensation Within SPU[5]

### A.     Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2023, 3,031 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,950 of these cases, with the remaining 81 cases dismissed.

Of the compensated cases, 1,677 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 148 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[6]

---

were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[5] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[6] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

1,501 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 1,273 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[7] Agreement |
|---|---|---|---|---|
| **Total Cases** | *148* | *1,501* | *28* | *1,273* |
| **Lowest** | $40,757.91 | $22,500.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $70,382.97 | $65,000.00 | $90,000.00 | $40,000.00 |
| **Median** | **$93,649.92** | **$85,000.00** | **$122,886.42** | **$56,250.00** |
| **3rd Quartile** | $125,000.00 | $112,654.00 | $161,001.79 | $82,500.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

[7] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

### B.    Pain and Suffering Awards in Reasoned Decisions

In the 148 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $90,000.00 as the median amount. Only seven of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[8]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In six cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### III.    The Parties' Arguments

Petitioner is seeking $95,000.00 for her actual/past pain and suffering, and $3,037.89 for unreimbursed expenses. Petitioner's Brief in Support of Damages ("Brief") at 1, 20, filed July 26, 2022, ECF No. 45. When arguing for this pain and suffering amount,

---

[8] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

she emphasizes her quick report of pain and pursuit of treatment only six days post-vaccination; the amount of treatment she required - which she characterizes as extensive; the difficulties she experienced caring for her 17-month-old child; and the overall duration of injury, which she calculates as lasting three or more years. *Id.* at 19-20. She favorably compares the facts and circumstances in her case with those suffered by the petitioners in *Bergstrom, Russano, Harper,* and *Accetta*[9] - decisions featuring past pain and suffering awards ranging from $80,000.00 to $95,000.00. Brief at 14-16.

Characterizing the amounts sought by Petitioner as excessive, Respondent counters that Petitioner should be awarded $65,000.00 for actual/past pain and suffering, and $1,211.90 in past unreimbursed expenses. Respondent's Response to Petitioner's Brief in Support of Damages ("Opp.") at 2, 9, 16, filed Sept. 26, 2022, ECF No. 48. He maintains that Petitioner's injury was primarily resolved almost one-year post-vaccination – in September 2020. *Id.* at 10-11. He also insists that the treatment Petitioner later sought was primarily for unrelated cervical and muscle pain. *Id.* He emphasizes these co-morbidities and other differences when distinguishing Petitioner's facts and circumstances from those in the four cases cited by Petitioner. *Id.* at 11-14. Respondent instead proposes *Dagen, Johnson,* and *Murray*,[10] in which petitioners received pain and suffering awards of $65,000.00, as more accurate comparable cases.

In his brief, Respondent otherwise states his continued belief that the proffered amount represents "the full values of damages," and that "[a]wards that significantly deviate from this full value incentivize petitioners to reject [R]espondent's full-value proffers, confident that the [C]ourt will *always* award more." Opp. at 9 (emphasis in the original). He complains that this practice increases the frequency of damages briefing, creating more work for Respondent and the Court, and increasing attorney's fees. *Id.*

In her reply brief, Petitioner criticizes Respondent's characterization of her SIRVA injury as mild. Petitioner's Reply in Support of Brief at 1-3 ("Reply"), filed Oct. 11, 2022, ECF No. 49. She argues that her proposed comparable cases are more analogous to Petitioner's circumstances. *Id.* at 3-7. In addition, maintaining that her "attempts at pain relief are well documented  . . . and therefore justify the purchases to alleviate any pain

---

[9] *Bergstrom v. Sec'y of Health & Hum. Servs.,* No. 19-0784V, 2021 WL 5754968 (Fed. Cl. Spec. Mstr. Nov. 2, 2021); *Russano v. Sec'y of Health & Hum. Servs.,* No. 18-0392V, 2020 WL 3639804 (Fed. Cl. Spec. Mstr. June 4, 2020); *Harper v. Sec'y of Health & Hum. Servs.,* No. 18-0202V, 2021 WL 5231980 (Fed. Cl. Spec. Mstr. Oct. 8, 2021); *Accetta v. Sec'y of Health & Hum. Servs.,* No. 17-1731V, 2021 WL 1718202 (Fed. Cl. Spec. Mstr. Mar. 31, 2021).

[10] *Dagen v. Sec'y of Health & Hum. Servs.,* No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019); *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021); *Murray v. Sec'y of Health & Hum. Servs.,* No. 18-0534V, 2020 WL 4522483 (Fed. Cl. Spec. Mstr. July 6, 2020).

and discomfort she has due to her vaccine injury," Petitioner reiterates her belief that she is entitled to the full amount of claimed expenses - $3,037.89. *Id.* at 8.

### IV.    Appropriate Compensation for Petitioner's Pain and Suffering

#### A.    General Analysis

I note at the outset that I previously have rejected Respondent's argument that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. *Sakovits*, 2020 WL 3729420, at *4. While "settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases," they are not as persuasive as reasoned decisions from a judicial neutral. *Id.* (emphasis in original). Taken as a whole, these decisions can be a helpful gauge of the compensation being awarded in SPU SIRVA cases. However, they still represent Petitioner's acquiescence to Respondent view of the value of the case.

Similarly, Respondent's assertion that special masters *always* award more than Respondent proposes in fully briefed damages cases is incorrect. There are many instances (including this very case) where I accept the amount Respondent proposes. But even then, I have found Petitioner's arguments favoring an alternative sum to be genuine.[11] And, if I encounter a case which does not fit that description, I could simply decline to award any unreasonable attorney's fees.

Otherwise, it is disingenuous to hold petitioners entirely responsible for the parties occasional inability to reach an informal agreement.[12] Just as petitioners (motivated by a desire to maximize their award) will sometimes offer comparable cases involving more severe pain and suffering, or fail to adequately show why their award should be greater as they contend, Respondent (as the Congress-designated steward of Program funds) may err in the other direction out of a desire to maintain Program funds for future vaccine-injured claimants. Good faith disagreement about the proper magnitude of a Program award is inherent to the judicial process that special masters oversee, and cannot overall

---

[11] Since assuming the role of Chief Special Master on October 1, 2019, and thus, responsibility for all SPU cases, I have awarded Respondent's proposed amounts in three SPU SIRVA cases involving reasoned decisions. *Rodgers v. Sec'y of Health & Hum. Servs.,* No. 18-0559V, 2021 WL 6773160 (Fed. Cl. Spec. Mstr. Dec. 29, 2021); *Aponte v. Sec'y of Health & Hum. Servs.,* No. 20-1031V, 2022 WL 4707180 (Fed. Cl. Spec. Mstr. Sept. 2, 2022); *Klausen,* No. 19-1977V (Issued on Feb. 2, 2023, this decision has not yet been posted to the Court's website). In another eight cases, I have awarded within $5,000.00 of Respondent's proposed amounts. Similarly, I have awarded the exact amounts Petitioner sought in five SPU SIRVA cases, and within $5,000.00 in ten cases.

[12] As noted in Section II of this Decision, the overwhelming majority of compensated SPU SIRVA cases – 2,802 out of 2,950 or 95 percent, are resolved by some type of informal agreements between the parties.

be blamed on one side's chronic intransigence.

### B.   Specific Analysis

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Ms. Henderson suffered a moderate SIRVA injury for approximately eleven months.[13] Simultaneously, she exhibited pain and tightness in other areas – such as her neck, back, and thighs - which appeared unrelated to her SIRVA injury.[14] Indeed, throughout her medical records, there are references to many unrelated co-morbidities such as cervicalgia, muscle tightness, spasms, cervical ligament strain, infertility, irregular menstrual cycle, and stress.[15] After September 2020, these other symptoms were the primary focus of Petitioner's treatment.[16]

---

[13] Petitioner consistently reported pain levels from one to eight on a scale of ten. *E.g.,* Exhibit 5 at 15 (reporting pain ranging from three to eight at a December 2019 PT session); Exhibit 7 at 4 (report pain ranging from one to eight at a January 2020 orthopedic appointment).

[14] *E.g.,* Exhibit 12 at 20 (also reporting "twitching and knotting of muscles in thighs/calf; eyes feel twitche [sic]" in early November 2019); Exhibit 5 at 10 (reporting neck pain in December 2019), at 15 (reporting right-sided neck pain which increased when working on the computer); Exhibit 12 at 13-14 (reporting knots in her back and significant tightness and periodic spasms in the morning in early December 2019).

[15] *E.g.,* Exhibit 5 (attributing her neck pain to a sprain of the ligaments of her cervical spine); Exhibit 8 at 8 at 31 (reporting that she also received PT for her cervical spine); Exhibit 20 at 8 (cervicalgia listed in acupuncture records from June 2021 through early 2022); Exhibit 18 at 4 (acupuncture for "[f]ertility, irregular cycle, [and] stress").

[16] *E.g.,* Exhibit 20 at 8 (acupuncture in June 2021 and early 2022 for cervicalgia, pain in the thoracic spine, shoulder pain and back muscle spasm); Exhibit 18 at 4 (facial acupuncture in July 2021 for "[f]ertility, irregular cycle, [and] stress"). Although the shoulder pain mention in June 2021 was described as right, instead of *left* shoulder pain, this entry could be due to a simple mistake. Later acupuncture records – from 2022, describe the same accompanying areas of pain, but indicate *left*, instead of right, shoulder. *Compare* Exhibit 20 at 7 *with id.* at 3-6. Thus, the evidence supports a reading more beneficial to Petitioner – that acupuncturist meant *left* shoulder when making this notation. *See id.* at 7.

Although Petitioner relied on acupuncture and massage to relieve her pain, much of this treatment was focused on her back and neck pain. Furthermore, the amount of massage therapy appears to be minimal, and cannot be properly assessed as Petitioner failed to provide any documentation for these visits. *See* Petition at 7, 9, 16; Brief at 5 (citing only Petitioner's signed declaration[17] for every mention of the massage therapy she underwent).

Petitioner links all symptoms experienced during this time to her SIRVA injury, but there is no medical record or other evidence to indicate that her treating physicians shared this view. And their inclusion of multiple, unrelated diagnoses further undermines Petitioner's claims in this area.

The cases proposed by Respondent offer the most appropriate comparisons to Petitioner's case. All involved prompt initial treatment, at least one cortisone injection (albeit offering only temporary relief) a similar amount of PT, and simultaneous co-morbidities. *Dagen*, 2019 WL 7187335, at *9-10; *Johnson*, 2021 WL 836891, at *7; *Murray*, 2020 WL 4522483, at *1-2. The *Johnson* and *Dagen* petitioners also suffered from cervical and back pain, respectively. *Dagen*, 2019 WL 7187335, at *2; *Johnson*, 2021 WL 836891, at *7. And the *Murray* petitioner was recovering from a car accident and negative side effects of horseback riding. *Murray*, 2020 WL 4522483, at *4-5.

I also find the *Tjaden* case – involving a past pain and suffering award of $68,000.00, to be instructive. *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-0419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021). Like Petitioner in this case, the *Tjaden* petitioner sought treatment within a week of vaccination and pursued treatment other than from her orthopedist (chiropractic care) – the focus of which was lumbar and cervical pain and tension. *Id.* at 5-6. However, the *Tjaden* petitioner's SIRVA injury lasted slightly longer – 15 months. And despite being an occupational therapist more able to self-treat, the *Tjaden* petitioner required slightly more PT, spanning twice the amount of time. Additionally, the *Tjaden* petitioner suffered an initial two-month period of more severe pain and limitations in ROM (an inability to raise her arm above 90 degrees), and she did not benefit from even the temporary relief Petitioner obtained from her steroid injection. *Id.* at 5. These differences dictate that Petitioner should be awarded slightly less than the *Tjaden* petitioner.

Because they involve petitioners with more extensive SIRVA injuries and no other sources of pain, the cases proposed by Petitioner – involving awards even greater than in *Tjaden* - do not offer appropriate comparisons to Petitioner's case. *Bergstrom*, 2021

---

[17] Petitioner's declaration was signed under penalty pursuant to the requirements of 28 U.S.C.A. § 1746. Exhibit 2.

WL 5754968, at *5-8; *Russano*, 2020 WL 3639804, at *3-4; *Harper*, 2021 WL 5231980, at *2-5; *Accetta*, 2021 WL 1718202, at *3-4. Following the guidance provided by the *Johnson, Dagen, Murray,* and *Tjaden* cases, I find $65,000.00 to be an appropriate amount for Petitioner's past pain and suffering.

## V.      Appropriate Amount of Unreimbursed Expenses

Petitioner seeks compensation in the amount of $3,037.89, to reimburse her for her out-of-pocket medical expenses. Brief at 20. Stating that these expenses are comprised of expenditures such as "copays, physical therapy, chiropractic care,[18] and massage therapy," Petitioner simply directs me to Exhibit A – her list of expenses and corresponding receipts.[19] Respondent counters that Petitioner should receive a lesser amount - $1,211.90. Opp. at 15. Besides objecting to any expense for treatment after September 2020, Respondent argues that some of the expenses were not related to Petitioner's SIRVA injury, not recommended by her treating physicians, and/or unsubstantiated by receipts or medical records. *Id.*

In her reply, Petitioner reiterates her assertion - that the SIRVA injury she experienced continued beyond September 2020. Reply at 7-8. Characterizing all expenses sought as related to "consistent methods of pain relief for a shoulder injury," Petitioner argues her "attempts at pain relief are well documented in the record and in Petitioner's affidavit and therefore justify the purchases to alleviate any pain and discomfort she has due to her vaccine injury." *Id.* at 8.

As I have already stated, Petitioner's SIRVA injury was largely resolved by September 2020, and the focus of her treatment thereafter was for unrelated areas of pain. Even treatment prior to this time was also for pain and muscle tension - not proven to be related to Petitioner's SIRVA injury. And Petitioner has failed to provide sufficient documentation for the massage therapy she received.

Additionally, Petitioner often failed to provide adequate documentation establishing that the requested reimbursement is appropriate. For example, to support an

---

[18] Other than this notation, there is no evidence Petitioner saw a chiropractor to treat her left shoulder pain. It appears Petitioner may be referring to her massage therapy.

[19] Because Petitioner filed Exhibit A in one document - along with her brief, without proper pagination, it initially was difficult to identify the corresponding receipt. When designating each expense list page number, it appears Petitioner intended to file Exhibit A as a separate attachment. Thus, the correct corresponding receipt can be located by adding 21 (the amount of pages utilized by Petitioner's brief) to the corresponding page number listed beside each expense. For example, the receipts for massage therapy performed in 2022 can be found on pages 27 through 29, instead of pages 6-8 as the expense list indicates. Brief at 23, 27-29. The receipt for the MRI indicated as located on page 47, can be found on page 68. *Id.* at 24, 68

expense of $38.35 for lab tests incurred on November 11, 2019, Petitioner submitted only her credit card statement showing a charge in this amount billed by LCA Labcorp[20] on December 24, 2019. Brief at 23, 72. She provided no further explanation or argument regarding this cost. And some of the documentation appears to be related to treatment which occurred in 2013 and 2014. *Id.* at 33-35. Regarding the orthopedic treatment she underwent in January 2020, Petitioner seeks reimbursement for both her copays and the patient amount listed on the orthopedist's billing records. *Id.* at 24, 32. However, the documentation related to treatment in 2013-14 shows these patient amounts were often adjusted for/forgiven by the provider. *See id.* at 33-35. The provided documentation does not show Petitioner actually incurred or paid these amounts. *Id.* at 32.

Given the lack of adequate documentation or explanation for many of the amounts sought by Petitioner, along with the fact that much of this treatment and testing was initiated by Petitioner for multiple overlapping but distinct co-morbidities, I find the amount proposed by Respondent to be reasonable. Therefore, I will award the amount which Respondent does not oppose - $1,211.90.

## Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I find that $65,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[21] I also find that Petitioner is entitled to $1,211.90 in actual lost wages. I therefore award a lump sum payment of $66,211.90 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[22]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[20] Labcorp appears to be a walk-in lab which accepts appointments directly. *See* https://www.labcorp.com (last visited Feb. 23, 2023).

[21] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[22] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.